Filed 11/13/13  In re Priscilla M. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| In re PRISCILLA M., a Person Coming Under the Juvenile Court Law. | B248893 |
|  | (Los Angeles County Super. Ct. No. CK55209) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANABEL M.,<br><br>Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Levin, Juvenile Court Referee.  Affirmed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Anabel M. appeals from the juvenile court's order terminating her parental rights over her eldest daughter, six-year-old Priscilla M., pursuant to Welfare and Institutions Code section 366.26.[1] Anabel contends the court erred in finding Priscilla adoptable and in concluding Anabel had not established the parent-child exception to termination of parental rights contained in section 366.26, subdivision (c)(1)(B)(i). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Section 300 Petition*

On December 27, 2011 the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging Anabel had a long history of drug abuse and was a current abuser of methamphetamine, making her unable to care for then four-year-old Priscilla and her siblings, one-year-old Samantha M. and newborn Vanessa M. The petition also alleged Anabel's parental rights over her sons, Angel M., Humberto B. and Anthony M., had been terminated in 2006 and 2007 after Anthony was born addicted to methamphetamine, the boys had been removed from her custody and she had failed to reunify with them.

2. *The Detention Hearing*

At the December 27, 2011 detention hearing the court detained Priscilla and Samantha and released them to Anabel provided they all reside in the home of the children's maternal grandmother.[2] The court ordered family preservation services and Anabel's participation in weekly random drug testing. Vanessa was released to her father but removed from his custody in January 2012 and placed with her siblings after her father tested positive for methamphetamine.

On February 28, 2012 the Department filed an emergency application pursuant to section 385 requesting the removal of Priscilla and her sisters from Anabel's custody after Anabel had failed to appear for six random drug tests and failed to return multiple

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] The maternal grandmother adopted Angel, Humberto and Anthony after Anabel's parental rights had been terminated.

telephone calls from the social worker. The court granted the request, removed the children from Anabel's custody and placed them under the temporary care and supervision of the Department.

### 3. *The Jurisdiction/Disposition Hearing*

At an uncontested jurisdiction hearing the court sustained the allegations in an amended petition, which included a new allegation that Anabel was also a current abuser of alcohol. The amended petition further alleged Vanessa's father was a current abuser of methamphetamine. The court found Priscilla and her sisters were persons described by section 300, subdivision (b), and declared them dependent children of the court. The court ordered all three children suitably placed under the supervision of the Department. The court also ordered family reunification services and monitored visits for Anabel and Vanessa's father.[3] Anabel was ordered to participate in individual counseling and random drug testing.

### 4. *The Six-month Review Hearing*

In a September 6, 2012 report prepared for the six-month review hearing (§ 366.21, subd. (e)), the Department recommended the court terminate Anabel's reunification services. The Department reported Anabel had not enrolled or participated in any court-ordered programs and had only submitted to two drug tests in the previous six months, one in which she tested positive for methamphetamine and amphetamine.[4] Meanwhile, Priscilla and her siblings had been placed with Mirna L. and Luis L., with whom they were thriving. Priscilla told social workers she did not want to live with her

---

[3] The court ordered no reunification services for Priscilla's alleged father or Samantha's alleged father as their whereabouts were unknown. (See § 361.5, subd. (b)(1).)

[4] The Department also recommended that Vanessa's father's reunification services be terminated for noncompliance with the case plan, as he, like Anabel, had not enrolled in any court-ordered programs and had only submitted to two drug tests in the previous six months.

mother and wished to stay with her foster family. Luis and Mirna confirmed to the Department they wanted and were prepared to adopt all three children.

Anabel objected to the Department's recommendation to terminate her reunification services over all three children, and the court continued the matter to October 24, 2012 for a contested hearing. Anabel failed to appear at the October 24, 2012 hearing. After determining notice had been properly given, the court denied Anabel's counsel's request to continue the hearing. The court terminated reunification services, identified adoption of the three children (a declared sibling group) as the permanent plan and set a selection and implementation hearing pursuant to section 366.26 for February 20, 2013, which it later continued to April 24, 2013.

5. *The Selection and Implementation Hearing*

On April 24, 2013 the court denied without hearing Anabel's section 388 request, filed the same date, to modify the court's October 24, 2012 order. The court then turned to the selection and implementation hearing, found Priscilla and Vanessa[5] were likely to be adopted and, concluding no exception to termination of parental rights applied, terminated Anabel's parental rights.

**DISCUSSION**

1. *Governing Law*

Section 366.26 governs the juvenile court's selection and implementation of a permanent placement plan for a dependent child. The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).) Once the court has decided to end parent-child reunification services, the legislative preference is for adoption. (§ 366.26, subd. (b)(1); *In re Celine R.* (2003) 31 Cal.4th 45, 53 ["[I]f the child is adoptable . . . adoption is the norm. Indeed, the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason

---

[5]     The court continued the section 366.26 hearing as to Samantha to permit proper publication notice to her father. Anabel's appeal is limited to challenging the termination of her parental rights over Priscilla.

4

for finding that termination of parental rights would be detrimental to the child."]; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [once reunification efforts have been found unsuccessful, the state has a "compelling" interest in "providing stable, permanent homes for children who have been removed from parental custody" and the court then must "concentrate its efforts . . . on the child's placement and well-being, rather than on a parent's challenge to a custody order"].)

Section 366.26 requires the juvenile court to conduct a two-part inquiry at the selection and implementation hearing. First, it determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250; *In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 804.) In making this determination "the juvenile court must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400; accord, *In re I.W.* (2009) 180 Cal.App.4th 1517, 1526.) "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650; accord, *In re Erik P*., at p. 400.)

If the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B); see *In re Matthew C.* (1993) 6 Cal.4th 386, 392 [when child adoptable and declining to apply one of the statutory exceptions would not cause detriment to the child, the decision to terminate parental rights is relatively automatic].) One of the statutory exceptions to termination is contained in section 366.26, subdivision (c)(1)(B)(i), which permits the court to order some other permanent

plan if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

 2. *Standard of Review*

The juvenile court's finding of adoptability is reviewed for substantial evidence. (See *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154; *In re Erik P., supra,* 104 Cal.App.4th at p. 400.)  A finding the requisite beneficial relationship exists under section 366.26, subdivision (C)(1)(B)(i), is also reviewed for substantial evidence (*In re K.P.* (2012) 203 Cal.App.4th 614, 621-622), while the determination whether the existence of that relationship constitutes a compelling reason not to terminate parental rights is reviewed for abuse of discretion (*ibid.*; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315).  When, as here, the court has found the parent has not satisfied his or her burden of proving the (c)(1)(B)(i) exception (see *In re Derek W.* (1999) 73 Cal.App.4th 823, 826 ["parent has the burden to show that the statutory exception applies"]), our review is limited to determining whether the evidence compels a finding in favor of the parent as a matter of law.  Specifically, as in all cases in addressing a failure of proof, "'the question becomes whether the [parent's] evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc*. (2011) 196 Cal.App.4th 456, 466; see generally *Valero v. Board of Retirement of Tulare County Employees' Retirement Assn*. (2012) 205 Cal.App.4th 960, 965.)

 3. *The Juvenile Court's Finding as to Priscilla's Adoptability Is Supported by Substantial Evidence*

Anabel contends the juvenile court's finding of adoptability is not supported by substantial evidence.  Citing evidence that Priscilla was diagnosed on February 20, 2013 with posttraumatic stress disorder, suffers from insomnia, is tearful at night, has been prescribed Prozac to deal with her condition and was represented by counsel in the

dependency proceedings who "did not have a firm grasp" of Priscilla's circumstances,[6] Anabel characterizes Priscilla as an "emotionally fragile child" who is unlikely to be adopted.

Contrary to Anabel's contention, the record is replete with evidence of Priscilla's adoptability. Priscilla is a developmentally normal six year old who is doing well in school and interacting appropriately with her peers and with adults. Although she has been diagnosed with posttraumatic stress disorder brought on by neglect, Priscilla has been receiving therapy and her symptoms of depression have significantly decreased. There is no evidence the neglect that is at the core of her diagnosis was the result of actions by her prospective adoptive family. To the contrary, she has developed a strong bond with her foster parents and their adult daughter, and her foster parents have confirmed they want to adopt Priscilla and her siblings once parental rights have been terminated.

4. *Anabel Failed To Establish the (c)(1)(B)(i) Exception to Termination of Parental Rights*

To satisfy the subdivision (c)(1)(B)(i) exception to termination a parent must prove he or she has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The "benefit" prong of the exception requires the parent to prove his or her relationship with the child "'"promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."'" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643; accord, *In re Amber M.* (2002) 103 Cal.App.4th 681, 689; see *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 ["the court balances the strength and quality of the natural parent/child relationship in a

---

6        Anabel observes that, at the selection and implementation hearing, Priscilla's counsel misidentified Priscilla's brothers as her cousins, telling the court Priscilla enjoyed visiting with her mother and grandmother because she enjoyed being with her older "cousins." Actually, Anabel's characterization of the boys is also incorrect. Since their adoption by their maternal grandmother, Angel, Humberto and Anthony are technically Priscilla's uncles.

tenuous placement against the security and the sense of belonging a new family would confer"].)  A showing the child derives some benefit from the relationship is not a sufficient ground to depart from the statutory preference for adoption.  (See *In re Angel B.* (2002) 97 Cal.App.4th 454, 466 ["[a] biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent"]; *In re K.P., supra,* 203 Cal.App.4th at p. 621.)  No matter how loving and frequent the contact, and notwithstanding the existence of an "'emotional bond'" with the child, "'the parents must show that they occupy "a parental role" in the child's life.'"  (*In re K.P.,* at p. 621.)  Factors to consider include "'the age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*In re Marcelo B.,* at p. 643.)  "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement."  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350; accord, *In re C.B.* (2010) 190 Cal.App.4th 102, 122; see *In re Celine R., supra,* 31 Cal.4th at p. 53 ["[t]he statutory exceptions merely permit the court, in *exceptional circumstances* [citation] to choose an option other than the norm, which remains adoption"].)

Anabel contends she met her burden of establishing the (c)(1)(B)(i) exception to the termination of parental rights because she had visited Priscilla regularly.  In determining that no exception to termination of parental rights applied, the court acknowledged Anabel's regular, albeit monitored, visitation, but correctly explained supervised visitation alone is insufficient to outweigh the statutory preference for adoption.  (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 51 [while day-to-day contact is not required, it is difficult to demonstrate a beneficial parent/child relationship when visits remain supervised]; *In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1109 [parent's failure to progress beyond monitored visitation with a child and to fulfill a "meaningful

and significant parental role" justifies order terminating parental rights]; *In re K.P., supra,* 203 Cal.App.4th at p. 621 [same].)

Significantly, Anabel did not expressly raise the (c)(1)(B)(i) exception at the selection and implementation hearing nor did she offer any argument, let alone evidence, as to the benefit to Priscilla of maintaining her parental rights. (See *In re Derek W., supra*, 73 Cal.App.4th 826.) Moreover, the record fully supports the court's conclusion the (c)(1)(B)(i) exception to termination did not apply. Priscilla and Anabel's parent/child bond prior to Priscilla's removal had been fairly tenuous; Anabel had been in jail or prison for a substantial portion of the four years Priscilla had spent in her legal custody, leaving Anabel under the supervision of her maternal grandmother. Following Priscilla's removal, the relationship between her and Anabel remained distant. According to social workers, Anabel paid more attention to Vanessa during her visits than to Priscilla or Samantha. Priscilla, who had bonded with her prospective adoptive family, repeatedly expressed her desire to be adopted by them and not return to Anabel's care. Simply stated, Anabel has not come close to demonstrating hers is the "extraordinary case" where the statutory mandate for adoption should be set aside in favor of maintaining her parental rights.

## DISPOSITION

The October 24, 2012 order terminating Anabel's parental rights as to Priscilla is affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.

9