Filed 1/23/15  Kipperman v. First American Title Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD M. KIPPERMAN, as Trustee in Bankruptcy etc., <br><br>     Plaintiff and Appellant, <br><br>       v. <br><br> FIRST AMERICAN TITLE COMPANY et al., <br><br>     Defendants and Respondents. | G050442 <br><br> (Super. Ct. No. RIC10024653) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed.

Cooley LLP, Ali M. M. Mojdehi, Janet D. Gertz and Allison M. Rego for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch LLP, Philip J. Giacinti, Jr., and Kendra J. Hall for Defendants and Respondents.

Dynamic Finance Corporation (Dynamic), a lender, was beneficiary on several deeds of trust in various positions secured by the same real property located in Temecula owned by North Plaza, LLC (hereafter referred to as North Plaza and the North Plaza Property). Dynamic sued First American Title Company (First American) claiming First American was negligent in recording what was intended to be a partial release of Dynamic's third position deed of trust, resulting in releasing all the secured property. In a bench trial, the trial court granted First American's motion for judgment under Code of Civil Procedure section 631.8.[1] On appeal, Dynamic[2] contends the trial court erred in its conclusions as to duty and causation. Dynamic also contends the uncontested facts supported liability on other theories not alleged in its complaint or litigated at trial. We find no merit to Dynamic's contentions, and we affirm the judgment.

FACTS AND PROCEDURE

*Complaint*

Dynamic's complaint filed in December 2010 contained a single cause of action against First American for negligence. The complaint alleged Dynamic was beneficiary of a third position deed of trust (Third Trust Deed) recorded in January 2001 encumbering the entirety of the 41-acre North Plaza Property. In August 2002, Dynamic decided to release the Third Trust Deed as to most of the North Plaza Property, retaining

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] The appellant is Richard Kipperman as trustee in the bankruptcy of North Plaza, to whom Dynamic (a creditor in that bankruptcy) assigned its cause of action. For clarity however, we will generally refer to the appellant as Dynamic. The defendants and respondents are First American Title Insurance, First American Title Insurance Company, and First American Title Company of Los Angeles (a company that no longer exists). We will generally refer to them collectively and in the singular as First American.

an interest only in the portion of the property known as Parcel 14. To effectuate that intent, Dynamic provided First American with a partial release document to record (hereafter the Partial Release). The complaint alleged that when the Partial Release was recorded, First American removed the legal description Dynamic had given First American and replaced it with a new legal description that failed to reserve Parcel 14 from the release. Dynamic did not discover First American's mistake until January 2004. Dynamic informed First American of the mistake and a correction to the Partial Release was prepared and recorded, but in the interim four additional deeds of trust had been recorded and Dynamic's Third Trust Deed lost its priority. In January 2004, North Plaza filed for bankruptcy. In February 2005, the North Plaza Property was sold netting $17.7 million available to pay North Plaza's secured creditors. However, because of the intervening liens on the North Plaza Property, Dynamic was left "totally unsecured" and recovered nothing relating to the interest covered by the Third Trust Deed.

*The Bench Trial*

The matter came on for a bench trial in June 2012. Dynamic introduced several exhibits and called three witnesses, only one of whom, Issac Lei, testified as to the matters concerning the issue on this appeal—i.e., First American's alleged negligence. Accordingly, we discuss Lei's testimony in detail.[3]

---

[3] Dynamic's two other witnesses were Gregson M. Perry, Dynamic's general counsel, and Roger Keith Doverspike, an appraiser. Perry testified about how the North Plaza Property bankruptcy trustee, Kipperman, acquired this lawsuit. He testified Dynamic also had a first priority trust deed on the North Plaza Property and the total debt owed on that lien was about $12.5 million. Dynamic settled that claim for $10.5 million and assigned its claim against First American on the Third Trust Deed (i.e., this lawsuit) to the bankruptcy trustee. Dynamic's property appraisal expert testified Parcel 14 had a value of $2,037,000 when the North Plaza Property was sold in 2005.

3

*Testimony of Issac Lei*

Lei testified he was an independent real estate broker who since 1997 frequently worked with Dynamic. He testified Dynamic was a finance company owned by Angela Sabella. Lei had participated in other Dynamic financing transactions involving the North Plaza Property and other properties owned by the same individuals involved in North Plaza and the North Plaza Property.

Lei testified the North Plaza Property was comprised of 16 separate parcels. In 1998, First American handled the escrow involving the North Plaza Property that involved a $4.4 million loan from Dynamic to North Plaza, secured by a first priority deed of trust on the North Plaza Property recorded in 1998 (First Trust Deed).[4] First American issued a title insurance policy to Dynamic in connection with the First Trust Deed transaction. The legal description of the entire North Plaza Property as used in that transaction (and subsequent transactions) described it as including "Parcel A:  [¶] Parcels 4 through 10, inclusive, and *12 through 16, inclusive*, as shown by Parcel Map 23496 on file [in the County of Riverside; and] [¶] Parcel B:  [¶] Being a portion of Parcel 11 and Parcel 2 of Parcel Map 23496 . . . on file [in the County of Riverside] specifically described as follows:  [metes and bounds description omitted]." (Italics added.)[5] Lei testified the legal description on the First Trust Deed was prepared by Dynamic's legal counsel and the legal description of Parcel A included Parcel 14.

In 1999, Sabella loaned two of North Plaza's owners (the Johnsons) $617,256 secured by a second position deed of trust (Second Trust Deed) on the North Plaza Property, a loan amount eventually increased to approximately $780,000.

---

[4]     Trial exhibits show the loan covered by the First Trust Deed was modified and increased at various times as follows:  to $6 million in 2000; to $8 million and then to $9 million in 2001; and to $9.5 million in 2003.

[5]     The all capital letters style of the legal descriptions has been changed to normal capitalization for reading ease.

4

In June 2000, Dynamic loaned $18 million to Rancho California Country Club, LLC, another company involving the Johnsons (the RCCC loan). The RCCC loan was secured by a deed of trust recorded in November 2000 on property known as Walker Basin, and First American handled that escrow and issued a title insurance policy relating to that transaction when it closed.

Subsequently, the $18 million RCCC loan was cross-collateralized with the North Plaza Property, giving rise to the Third Trust Deed (admitted into evidence as Exhibit 107), which is the subject of this action. The Third Trust Deed bears an execution date of June 30, 2000, but it was not recorded until January 2001. The recorded Third Trust Deed, apparently prepared by Dynamic's legal counsel contains the same legal description of the North Plaza Property as the FDT (i.e., describing Parcel A as being Parcels 4 through 10, and *12 through 16, inclusive,* of Parcel Map 23496).

Although the Third Trust Deed was recorded by First American, Lei testified it was done so only as an "accommodation recording," which he understood meant First American did not examine the document for its legal effect or sufficiency. The Third Trust Deed bears an "accommodation stamp" stating First American recorded the instrument only as an accommodation, and First American did not examine the Third Trust Deed for "regularity and sufficiency or as to its effect upon the title to any real property that may be described herein."

Lei testified that on November 6, 2002, he sent the Partial Release of the Third Trust Deed, which was signed and notarized by Sabella on August 29, 2002, to Linda Kenaston in First American's Ontario office for recording. Dynamic introduced into evidence as Exhibit 108 a letter Lei testified he sent to Kenaston, which had a copy of the signed Partial Release document attached. The letter stated Lei was enclosing a Partial Release to correct the Third Trust Deed recorded in 2001. The letter stated only Parcel 14 was supposed to have been the cross-collateral covered by the Third Trust Deed, but First American had changed the legal description to encumber the entire

5

property so it was now necessary to correct the lien. At trial, however, Lei testified the 2002 Partial Release came about because the borrower (i.e., RCCC) was getting some new financing so Dynamic was now agreeing to release the Third Trust Deed as to all of the North Plaza Property except Parcel 14.

Lei testified his November 6, 2002, letter did not contain any specific instruction to Kenaston to record the Partial Release document, but in a telephone conversation he told Kenaston to record the document, and she said "'fine.'" But Kenaston returned the document to Lei telling him the Ontario office did not record documents. Lei hand delivered the Partial Release document to "Bill Callahan" in First American's Riverside office and directed him to record it. The Partial Release document stated upon recording it was to be mailed to Dynamic's legal counsel. Lei testified he would "almost always" receive copies of recorded documents back from legal counsel. After delivering the document to Callahan, Lei never heard anything from Callahan and never received a copy of the recorded Partial Release.

Lei testified he was only asking First American to do an accommodation recording of the Partial Release. He testified First American would not be paid to record the document, and there was no open escrow or title insurance order to which the Partial Release related. Lei agreed he could have recorded the Partial Release himself, but it was easier to have First American do it. Lei testified he understood what an accommodation recording was and it was not part of any escrow or title insurance transaction. He testified that sometimes a document being recorded as an accommodation would bear a stamp on it saying it was an accommodation recording but sometimes it would not.

Lei testified Dynamic's legal counsel prepared the Partial Release and the legal description that was attached when he gave it to Callahan to record. The Partial Release stated North Plaza was owner of the property described in "Exhibit A," which was encumbered by the Third Trust Deed, and Dynamic was releasing the

6

Third Trust Deed as to the property described in "Exhibit B." Exhibit A described Parcels A and B of the North Plaza Property identically to the legal descriptions in prior recorded documents, i.e., Parcel A was described as "Parcels 4 through 10, inclusive, and *12 through 16, inclusive*, as shown by Parcel Map 23496" (italics added), and Parcel B was described as "Parcel 11 . . . and [a] portion of Parcel 2 of . . . Parcel Map 23496 . . . ." Exhibit A also included a separate description of Parcel 14 as being "Parcel 14 as shown by Parcel Map 23496 . . . ." Exhibit B, titled "Legal Description of Released Property," contained the identical description of Parcel A and Parcel B as being the released property that was on Exhibit A, i.e., Parcel A, which was being released from the Third Trust Deed, included "Parcels 4 through 10, inclusive, and *12 through 16, inclusive*, as shown by Parcel Map 23496" (italics added). Exhibit B made no other mention of Parcel 14. Although Lei testified Dynamic's legal counsel assured him the legal description would leave the Third Trust Deed in place on Parcel 14, at trial, he agreed Exhibit B, which described Parcel A as including "Parcels . . . *12 through 16, inclusive*," included Parcel 14 as part of the property being released from the Third Trust Deed.

Lei testified that in January 2004, the North Plaza Property was being sold and he got a call from Bill Johnson (owner of North Plaza) informing the Third Trust Deed did not show up on the preliminary title report. Lei set up a meeting with Kenaston and for the first time saw the Partial Release that was recorded on November 12, 2002 (introduced into evidence as Exhibit 109). The recorded Partial Release was the same document Lei testified he gave Callahan to record[6] but the recorded Partial Release did not have an Exhibit A and Exhibit B. Instead, the recorded Partial Release had a

---

[6]        The title on the recorded document was altered by hand from "partial release of deed of trust, with absolute assignment of leases and rents, security agreement and fixture filing" to just "partial release of deed of trust."

one-page legal description of the property being released which was identical to the original Exhibit B, i.e., the recorded legal description described Parcel A as "Parcels 4 through 10, inclusive, and *12 through 16, inclusive*, as shown by Parcel Map 23496" (italics added), Parcel B as "a portion of Parcel 11 and Parcel 2 of Parcel Map 23496," and made no specific mention of Parcel 14.

Lei testified Kenaston told him Callahan changed the legal description before recording the document, and in a subsequent meeting with First American's legal counsel, Dan Buchanan, Buchanan admitted Callahan had changed the legal description. Lei also agreed, however, that the legal description of the property being released from the Third Trust Deed as described in Exhibit B of the document he testified he gave Callahan to record was identical to the one-page legal description attached to the recorded document.

Lei testified he, Kenaston, and Buchanan came up with a corrected legal description of the released property and a "correction" to the Partial Release was recorded on January 27, 2004. The corrected legal description described Parcel A as "Parcels 4 through 10, inclusive, and *12, 13, 15 & 16 inclusive*, as shown by Parcel Map 23496 . . . ." (Italics added.) Lei testified that between November 12, 2002 (the original recordation date) and January 2004, when the correction was recorded, several other deeds of trust had been recorded against the property and the Third Trust Deed lost its priority.

*Testimony of Dan Buchanan*

Buchanan was called as a defense witness out of order before Dynamic finished its case. He was First American's regional counsel from 2002 to 2004. He testified "Bill Callanan" (not "Callahan") was a title officer who worked in First American's Riverside office, but he no longer worked for First American. Kenaston was an escrow officer in the Ontario office.

8

Buchanan explained accommodation recordings are done for customers at no charge (other than payment of the county recording fees). Usually, but not always, the document will be stamped that it is an accommodation recording only, and there often will be an accommodation agreement signed by the customer. Buchanan agreed the Partial Release recorded by First American did not bear an accommodation stamp, and there was not an accommodation agreement. He also testified that based on his review of First American's records, there were no open escrow or title policy orders pertaining to the North Plaza Property in 2002 when the Partial Release was recorded.

Buchanan testified that in an accommodation recording, First American makes no effort to ensure the document does what the parties intend—it just makes sure it is a recordable document and records it. First American title officers are trained to not make alterations to documents that are already signed and notarized unless they have been instructed to do so.

Buchanan testified he had no knowledge of where the legal description attached to the Partial Release came from or who attached it. He had no knowledge of the recording transaction. He agreed the recorded legal description had a First American title order number on the top, but it would not necessarily pertained to any particular open escrow or title insurance transaction.

*Motion for Judgment/Statement of Decision*

After Dynamic concluded its case, First American moved for judgment under section 631.8 on several grounds. As relevant to the issues in this appeal, First American argued Dynamic failed to prove causation because the legal description that Lei testified was attached to the Partial Release he transmitted to First American, which was prepared by Dynamic's legal counsel, had the same effect as the legal description attached to the recorded document—both included Parcel 14 in the description of the property being released from the Third Trust Deed. First American argued Dynamic failed to prove First American had altered the legal description (or had

9

done so without permission)—it did not call Kenaston or Callahan as witnesses. And First American argued Dynamic failed to establish First American had any duty beyond recording the Partial Release—i.e., it had not established First American had a duty to confirm that the Partial Release carried out Dynamic's intentions. The trial court granted the motion for judgment.

The trial court subsequently signed and entered a "joint statement of decision" that was approved as to form by counsel for both sides, and to which no side filed any objections. The trial court found Dynamic had failed to establish causation. It reasoned the legal description of the property being released from the Third Trust Deed contained in the document Dynamic contends was given to First American for recording (i.e., Exhibit B prepared by Dynamic's legal counsel), was identical to the legal description in the recorded document. Thus, regardless of which legal description had been included, the result would have been the same—both documents released Parcel 14 from the Third Trust Deed. The trial court also concluded First American's duty was simply to record the document—it had no duty to inspect, confirm, or ensure the document carried out Dynamic's intent in executing the Partial Release. First American carried out its duty to record the document, and Dynamic had not established any duty beyond that. Judgment was entered for First American, and Dynamic filed this appeal.

DISCUSSION

A. *Standard of Review*

Dynamic contends the trial court erred by granting First American's motion for judgment under section 631.8. Prior to addressing Dynamic's specific arguments, we set forth general principles of law affecting our review.

Section 631.8 provides in pertinent part: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts *shall weigh the evidence* and may render a judgment in favor of the moving party, in which case the court shall make a statement of

10

decision as provided in [s]ections 632 and 634, or may decline to render any judgment until the close of all the evidence.  The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party."  (Italics added.)

"""The purpose of . . . section 631.8 is 'to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.'  [Citation.]  Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof.  [Citation.]  In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence.  [Citations.]"'  [Citation.]  [¶]  '"The standard of review of a judgment and its underlying findings entered pursuant to section 631.8 is the same as a judgment granted after a trial in which evidence was produced by both sides.  In other words, the findings supporting such a judgment 'are entitled to the same respect on appeal as are any other findings of a trial court, and are not erroneous if supported by substantial evidence.'"  [Citations.]  '"[W]hen the decisive facts are undisputed, [however,] the reviewing court is confronted with a question of law and is not bound by the findings of the trial court.  [Citation.]  In other words, the appellate court is not bound by a trial court's interpretation of the law based on undisputed facts, but rather is free to draw its own conclusion of law."'  [Citations.]"  (*Plaza Home Mortgage, Inc. v. North American Title Co., Inc.* (2010) 184 Cal.App.4th 130, 135.)

When a statement of decision has been issued, we are additionally guided by well-established rules.  "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its

11

correctness. [Citations.]" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) Specifically, "[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48 (*Fladeboe*).)

To avoid such implied findings, a party must follow the two-step process provided by sections 632 and 634. (*Arceneaux, supra,* 51 Cal.3d at pp. 1133-1134.) "[F]irst, a party must request a statement of decision as to specific issues to obtain an explanation of the trial court's tentative decision [citation]; second, if the court issues such a statement, a party claiming deficiencies therein must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment [citation]." (*Id.* at p. 1134.) If a party fails to bring omissions or ambiguities in the statement of decision to the trial court's attention, "that party waives the right to claim on appeal that the statement was deficient in these regards," and the reviewing court will infer the trial court made implied factual findings to support the judgment, even on issues not addressed in the statement of decision. (*Ibid.*; see *Fladeboe, supra,* 150 Cal.App.4th at pp. 59-60.)

Because Dynamic did not object to the statement of decision, on appeal we may only consider legal errors that appear on the face of the statement, and whether the court's findings of fact (express and implied) are supported by substantial evidence. (*Fladeboe, supra*, 150 Cal.App.4th at p. 59.)[7] In applying the substantial evidence

---

[7]     Dynamic cites *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006 (*Cars 4 Causes*), for the proposition that *whenever* a statement of decision has been issued, we are bound by the express findings and *cannot* infer any other implied findings by the trial court in support of the judgment. Its assertion is based on the following statement in *Cars 4 Causes* that "[b]ecause the trial court issued a statement of decision, we are bound by express findings supported by the evidence but will not imply other findings in support of the judgment. [Citation.]" (*Id.* at p. 1012, citing *Arceneaux, supra,* 51 Cal.3d at p. 1133.) But in *Cars 4 Causes*, there is no

12

standard, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. . . ." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660; *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514-515.)

*B. Duty*

Dynamic's complaint alleged a single negligence cause of action. It raises numerous arguments on appeal, many of which relate to causes of action that were not alleged in its complaint or at trial, but on which it now contends it was entitled to a judgment. We begin with the negligence cause of action that was litigated.

The elements of negligence are: "(1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff. [Citation.]" (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954.)

Dynamic largely contends the trial court erred in its assessment of the scope of First American's duty and whether that duty was breached. The trial court concluded the only duty First American owed was to record the Partial Release as Dynamic requested, a conclusion that is consistent with First American's assertion this was an "accommodation recording." Dynamic contends First American owed a broader duty because it was an escrow holder. Dynamic asserts that as an escrow holder, First American owed a fiduciary duty to comply strictly with Dynamic's instructions. (*Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 381 ["escrow holder bears

express mention of whether or not appellant objected to the statement of decision. We must assume it had objected because otherwise that above quoted statement in *Cars 4 Causes* would conflict with the very Supreme Court case it cites, *Arceneaux, supra,* 51 Cal.3d 1130, which holds that absent objections to the statement of decision, we must infer the trial court made implied findings to support the judgment. Accordingly, because Dynamic raised no objections to the statement of decision, the doctrine of implied findings applies in this case.

13

a fiduciary relationship to each party to the escrow and must comply strictly with the instructions of the principals"].)  In addition, Dynamic contends First American had a

duty to alert Dynamic to any problems with the legal description contained in the Partial Release, to abstain from recording the Partial Release once it saw there were problems with the legal description, and to ensure the recorded Partial Release effectuated Dynamic's intention that Parcel 14 remain encumbered by the Third Trust Deed.

We agree with the trial court's assessment of the extent of First American's duty. Preliminarily, this was not an open escrow transaction, and First American was not acting as an escrow agent. Financial Code section 17003, subdivision (a), defines an escrow as "any transaction in which one person, for the purpose of effecting the sale, transfer, encumbering, or leasing of real or personal property to another person, delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by that third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by that third person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employee of any of the latter." The essence of an escrow is a deposit of some document or property to a third party to be delivered upon the occurrence of some condition. (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit Financial*).)

Here, there was no deposit of a document to be delivered or recorded upon occurrence of some condition. Lei testified he only asked First American to do an accommodation recording of the Partial Release, First American would not be paid, there was no open escrow or title insurance order to which the Partial Release related, and it was not part of any open transaction. Lei agreed he could have recorded the Partial Release himself, but it was easier to have First American do it for him. Buchanan testified accommodation recordings were unrelated to any pending escrow or title insurance transaction and no effort to ensure the document does what the parties

15

intend—First American just makes sure it is a recordable document and records it. He testified there were no open escrows or title policy orders relating to the North Plaza Property in 2002 when the Partial Release was recorded.

Dynamic makes much of the fact the recorded Partial Release was not stamped that it was an accommodation recording and there was no written accommodation agreement. It largely relies on *Rooz v. Kimmel* (1997) 55 Cal.App.4th 573, which it cites for the proposition that without an accommodation stamp on the recorded document and a written accommodation agreement, the recording should be construed as being part of an escrow transaction so as to impose greater duties on First American. *Rooz* does not aid Dynamic. That case concerned the contractual interpretation of an indemnification clause contained in an accommodation agreement—the agreement provided the title company would record the document as a favor to its customer, and without any commercial benefit, only if the customer promised to release and indemnify the title company from all potential liability for any negligence in recording the document. (*Id.* at p. 586.) The court held the release was broad enough to cover the title company's active negligence. (*Ibid.*) *Rooz* has no bearing on the scope of duty in a negligence action. Here, Dynamic's only witness testified the Partial Release was recorded as an accommodation, and documents being recorded as an accommodation did not always bear a stamp saying it was an accommodation recording.

In any event, even if considered part of an escrow transaction, an escrow agent's duty is limited. Although an escrow agent's potential liabilities derive from basic law of agency (see *Rianda v. San Benito Title Guar. Co.* (1950) 35 Cal.2d 170, 173), the agency is limited and special—it is not a general agency. (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 440; see Civ. Code, § 2297 ["An agent for a particular act or transaction is called a special agent. All others are general agents."].) As our Supreme Court noted in *Summit Financial, supra,* 27 Cal.4th at page 711, "The agency created by the escrow is limited—limited to the obligation of the escrow holder to

16

carry out the instructions of each of the parties to the escrow. [Citations.] . . . [¶] In delimiting the scope of an escrow holder's fiduciary duties, then, we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]' [Citation.] On the other hand, an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.]" Here, the only instruction Lei testified he gave Callahan was to record the Partial Release. No other. The trial court correctly concluded First American's duty was limited to carrying out that task.

Dynamic argues that even if the only instruction was to record the Partial Release, once First American undertook to alter the legal description, it assumed a larger duty—namely, to notify Dynamic there was a problem with the legal description and to ensure the revised legal description carried out Dynamic's intention to release the Third Trust Deed as to all but Parcel 14. But Dynamic's entire argument is premised on the erroneous assumption the trial court found First American improperly altered the Partial Release's legal description. No such finding was made by the trial court. Although "[t]he existence of duty is a question of law to be decided by the court," whether that duty was breached is a question of fact. (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278.) The statement of decision, to which no objections were made, found only that the Partial Release as recorded contained a different legal description than the one Lei claimed was attached to the Partial Release he handed to Callahan to record, which was prepared by Dynamic's legal counsel. The court made no finding that First American improperly altered the legal description. And under the doctrine of implied findings, we must infer a finding First American *did not* improperly alter the legal description, and consider only whether substantial evidence supports that finding. (*Fladeboe, supra,* 150 Cal.App.4th at pp. 48, 59-60.)

17

In determining whether substantial evidence supports the trial court's implied finding First American did not improperly alter the legal description on the recorded Partial Release, we are mindful of the standard of a motion for judgment under section 631.8. "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case. [Citations.] [¶] 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.]" (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 965-966 (*Valero*); see also *Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *Caron v. Andrew* (1955) 133 Cal.App.2d 402, 409.)

It was Dynamic's burden to prove First American breached a duty by improperly altering the legal description on the Partial Release, and the evidence Dynamic presented was not so compelling as to require the trial court find that it did. The only witness Dynamic offered on this issue was Lei—testifying 10 years after the events occurred—that he hand delivered the Partial Release document to Callahan, with the legal description prepared by Dynamic's legal counsel, and told him to record it. Dynamic did not call Callahan or Kenaston as witnesses to ascertain where the legal description on the recorded document came from. No other witnesses from

18

Dynamic—notably Sabella, who executed the Partial Release—testified. Lei testified Kenaston told him in 2004 that Callahan changed the legal description before recording the document, but in weighing the evidence the court could disregard this rank hearsay. (Evid. Code, § 1200 et seq.) Lei testified Buchanan admitted Callahan changed the legal description before recording the document. But Buchanan adamantly denied ever making any such statement. Moreover, Buchanan testified First American title officers were trained to not make any alterations to documents that were already signed and notarized *unless they have been instructed to do so*. The trial court could infer from Buchanan's testimony that either Callahan did not change the legal description or would not have changed the legal description unless authorized by someone from Dynamic to do so. We cannot say Dynamic's evidence was so overwhelming that it left the trial court no room to find Dynamic failed to prove Callahan or someone else at First American changed the legal description on the recorded document without authorization. (*Valero, supra,* 205 Cal.App.4th at p. 966.)[8]

---

[8]     For this reason we need not consider the new arguments and tort theories raised by Dynamic in this appeal. They include: (1) negligence per se—Dynamic argues First American violated unspecified statutes and committed the criminal act of forgery by changing the legal description on two notarized documents—the Third Trust Deed and the Partial Release—creating a rebuttable presumption of negligence (Evid. Code, § 669); (2) superseding criminal conduct—that First American's criminal act of forgery by changing the legal description on a notarized document prior to recordation, supersedes any negligence by Dynamic's legal counsel in drafting the original legal description; and (3) fraud—Dynamic argues First American improperly altered the legal description on the Partial Release and then fraudulently concealed the fact that it had done so. And in any event, Dynamic's failure to raise these issues below precludes them on appeal. "An appellate court generally will not consider a new theory of liability for the first time on appeal. [Citation.] We have the discretion to consider for the first time on appeal an issue of law based on undisputed facts, but we will not consider a new issue where the failure to raise the issue in the trial court deprived an opposing party of the opportunity to present relevant evidence. [Citations.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1409 (*Rayii*).)

19

We also reject Dynamic's contention Lei's express instructions to First American went beyond simply recording the Partial Release and included an instruction to correct an earlier mistake First American allegedly made in recording the original Third Trust Deed. In short, Dynamic contends the Third Trust Deed itself was only supposed to encumber Parcel 14 in the first place, but when First American recorded the Third Trust Deed in 2001, it "negligently" altered the legal description on the Third Trust Deed to encumber all the North Plaza Property. Dynamic's argument is premised solely on the statement in Lei's November 2002 letter to that effect. But there is no evidence that letter was ever given to Callahan or that he was ever instructed to do anything but record the Partial Release—Lei testified the documents he mailed to Kenaston were returned to him and he then hand delivered the Partial Release to Callahan and told him to record it. Lei did not testify he gave Callahan the letter or he instructed Callahan to correct any alleged mistake in the Third Trust Deed. Moreover, Dynamic's complaint contained no allegations of negligence in recording the original Third Trust Deed, and no such argument was raised below. The complaint alleged the Third Trust Deed recorded in 2001, encumbered the entire North Plaza Property and in 2002 Dynamic decided to release the Third Trust Deed as to all but Parcel 14. In its trial brief, Dynamic made no suggestion it contended the original Third Trust Deed was erroneous, and it specifically argued the Partial Release was due to new financing arrangement for the debt covered by the Third Trust Deed. Lei testified at trial the Partial Release came about due to new financing, and he did not testify the Third Trust Deed itself had been negligently altered. Accordingly, we decline to consider the new theory of negligence raised for the first time on appeal. (*Rayii, supra,* 218 Cal.App.4th at p. 1409.)

*C. Causation*

Because we conclude substantial evidence supports the trial court's finding First American did not breach a duty of care owed to Dynamic, a duty that was limited to

20

recording the Partial Release, we need not address the trial court's findings on causation. Suffice it to say, they too are supported by substantial evidence.

"California has adopted the 'substantial factor' test for cause-in-fact determinations. [Citation.] 'A defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.' [Citation.]" (*Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 33.) "Causation is generally a question of fact . . . unless reasonable minds could not dispute the absence of causation. [Citation.]" (*Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656, 666.)

The trial court found Dynamic could not have been damaged by First American's alleged negligence because the legal description attached to the recorded Partial Release had the same effect as the one prepared by Dynamic's legal counsel: Both documents released Parcel 14 from the Third Trust Deed. Dynamic's only witness, Lei, agreed the original legal description released Parcel 14. Exhibit A (the property encumbered by the Third Trust Deed) described Parcel A as including "Parcels . . . *12 through 16, inclusive*" and Exhibit B (the property being released from the Third Trust Deed), identically described Parcel A as including "Parcels . . . *12 through 16, inclusive . . . .*" (Italics added.) Parcel 14 was included in both exhibits' descriptions of Parcel A. In argument on First American's motion for judgment, Dynamic's counsel conceded he had not presented any evidence suggesting otherwise. On appeal, Dynamic argues the original legal description would have preserved the Third Trust Deed encumbrance on the Parcel 14 because Exhibit A included a separate description of Parcel 14 and Exhibit B did not. Not only is the argument devoid of any

21

legal analysis or citation to authorities (see *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [court may treat as waived argument unsupported by reasoned argument and citations to authority]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [same]), it ignores that Exhibit B describing the property being released from the Third Trust Deed specifically included Parcel 14 in its description of Parcel A.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.