[No. F062601. Fifth Dist. May 1, 2012.]

JOE VALERO, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF TULARE COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION, Defendant and Respondent.

**COUNSEL**

Thomas J. Tusan for Plaintiff and Appellant.

Kathleen Bales-Lange, County Counsel, and Judy Chapman, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**FRANSON, J.**—Respondent Board of Retirement of Tulare County Employees' Retirement Association (the Board) denied the application of appellant Joe Valero for a service-connected disability retirement. Valero petitioned the superior court for an administrative writ of mandate directing the Board to grant him a service-connected disability retirement. He contended that a disabling psychiatric condition, a panic disorder which the Board concedes he suffers from, was service connected. The Board contended that the condition was not service connected. The court denied Valero's petition. Valero has appealed from the ·superior court's denial order, and contends that the

superior court's order is not supported by substantial evidence. As we shall explain, we find his contention without merit, and affirm the superior court's order denying the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Certain basic facts are undisputed. Valero was hired as an "Office Assistant II" by the County of Tulare Health and Human Services Agency (the County) in April of 1999. In that position, he had interaction with members of the public, sometimes in stressful situations. On February 6, 2007, he submitted an application to the Board for a disability retirement. On that application, he described the nature and cause of the disabilities that permanently incapacitated him from the performance of his job duties as "[a]nxiety, and high blood pressure [¶] 12-2-04 [¶] cardiovascular." He explained this was caused by his interaction with angry clients at work in December of 2004. His application included a "Treating Physician's Statement of Disability" (some capitalization omitted), stating that Valero was permanently disabled from his occupation and that his employment substantially contributed to the disability.

On July 9, 2008, the Board determined that Valero failed to meet his burden of establishing service connection, and instead granted Valero a non-service-connected disability retirement. In accordance with Board procedure, Valero, representing himself, requested an informal hearing on the issue of service connection, and the matter was submitted to a hearing officer for a proposed decision. The "informal hearing" was conducted "without a formal evidentiary hearing" and was based upon the hearing officer's review of documentary material provided to her. On February 6, 2009, the hearing officer concluded that Valero failed to establish that his permanent psychiatric incapacitation was service connected. For various reasons, the hearing officer essentially declined to accept the medical opinions contained in four medical reports submitted by the parties[1] and, after consideration of other evidence, including voluminous employment and medical records, concluded that Valero failed to meet his burden to show that his County employment was a "substantial factor" in bringing about his psychiatric disability.

---

[1] The evidence considered by the hearing officer, the Board, and the court included reports from Drs. Dennis C. Lewis, Ph.D., Howard B. Terrell, M.D., Howard M. Greils, M.D., and Andrew D. Whyman, M.D. Dr. Lewis was Valero's treating psychologist beginning on February 4, 2005. Psychiatrist Howard B. Terrell, M.D., examined Valero at the request of his workers' compensation attorney. Psychiatrist Howard M. Greils, M.D., examined Valero at the request of the workers' compensation attorney representing the County of Tulare. Psychiatrist Andrew D. Whyman, M.D., examined Valero as the agreed medical examiner. Drs. Terrell, Greils, and Whyman each reviewed medical records, interviewed and tested Valero. Each of these psychiatrist's reports and opinions followed workers' compensation protocol and standards, not the disability retirement causation standards of Government Code section 31720.

On April 8, 2009, the Board voted unanimously (seven to zero, with three of the 10 members absent) to follow the recommendation of the hearing officer and to deny Valero's application for a service-connected disability retirement.

Valero then filed his superior court petition for administrative mandamus under Code of Civil Procedure section 1094.5 on July 2, 2009. After concluding that the hearing officer properly rejected the opinions contained in the four medical reports, the court independently reviewed the remaining evidence and concluded that Valero had not met his burden to show a real and measurable connection between his permanent psychiatric disability and his employment. It also rejected the argument that the findings of the hearing officer were not supported by the weight of the evidence and denied Valero's petition on May 2, 2011.

This appeal followed.

## DISCUSSION

### I. *County Employee Disability Retirement*

As an employee of the County, Valero became a "member" of the County's retirement association. (Gov. Code, §§ 31470, 31552.)[2] Section 31720 pertains to qualification of a member for disability retirement and states in pertinent part:

"Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if:

"(a) The member's incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity, or

"(b) The member has completed five years of service, and

"(c) The member has not waived retirement in respect to the particular incapacity or aggravation thereof as provided by Section 31009."

The phrase "and such employment contributes substantially to such incapacity" was added to subdivision (a) of section 31720 in a 1980 amendment that became effective on January 1, 1981. (*Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 574–575 [229 Cal.Rptr. 814, 724 P.2d 500] (*Bowen*).)

---

[2] All further statutory references are to the Government Code unless otherwise specified.

In *Bowen*, the court stated that this amendment was intended to disapprove language in the case of *Heaton v. Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421 [133 Cal.Rptr. 809], which held that an "infinitesimal contribution" of the member's employment to the member's permanent incapacitation might suffice to qualify the member for a service-connected disability retirement. (See *Bowen, supra*, at p. 576.) *Bowen* held that the amendment was not intended to disapprove the holding of *DePuy v. Board of Retirement* (1978) 87 Cal.App.3d 392 [150 Cal.Rptr. 791] that the causal connection between the member's disability and the member's job must be "real and measurable." (*Id.* at p. 399; see *Bowen, supra*, at p. 579.) The *Bowen* court stated:

"In the 1980 amendment to section 31720, the Legislature intended to disapprove not the entire body of case law construing that section, but only the 'infinitesimal contribution' language in *Heaton*. [Citation.] Therefore, we may rely on prior case law to define the appropriate test for industrial causation under section 31720. For example, in *DePuy v. Board of Retirement, supra*, 87 Cal.App.3d 392, 398–399, the court stated that an 'infinitesimal' or 'inconsequential' connection between employment and disability would be insufficient for a service-connected disability retirement. Instead, the court concluded that 'while the causal connection between the [job] stress and the disability may be a small part of the causal factors, it must nevertheless be *real* and *measurable*. There must be substantial evidence of some connection between the disability and the job.' [Citations.]

"This formulation of the substantial contribution test, requiring substantial evidence of a 'real and measurable' connection between the disability and employment, would not disturb the Legislature's intent to reject the *Heaton* decision ([*Heaton,*] *supra*, 63 Cal.App.3d 421). The substantial contribution test 'would not include any contribution of employment to disability, no matter how small and remote.' [Citation.] 'Indeed, once the *Heaton* implications are checked, there is *no significant difference* between the pre- and postamended section 31720 tests for disability.' [Citation.] In addition, this definition of substantial contribution also comports with the principle that pension legislation be applied fairly and broadly." (*Bowen, supra*, 42 Cal.3d at pp. 577–579, fn. omitted, original italics.)

■ Based on this statutory and case authority, a disability applicant's employment must contribute substantially to, or be a real and measurable part of, the employee's permanent disability, in order to qualify the employee for a disability retirement.

II. *Standard of Review*

After a retirement board has reached a decision, the superior court exercises its independent judgment in reviewing the administrative decision of the board. (*Dickey v. Retirement Board* (1976) 16 Cal.3d 745 [129 Cal.Rptr. 289, 548 P.2d 689]; *County of Alameda v. Board of Retirement* (1988) 46 Cal.3d 902 [251 Cal.Rptr. 267, 760 P.2d 464].) On an appeal from the superior court, an appellate court applies the substantial evidence test. "After the trial court has exercised its independent judgment in weighing the evidence, our task is to review the record to determine whether the trial court's findings are supported by substantial evidence. [Citation.] The trial court's decision should be sustained if it is supported by credible and competent evidence. [Citation.]" (*Wieser v. Board of Retirement* (1984) 152 Cal.App.3d 775, 783 [199 Cal.Rptr. 720].)

Valero contends that his interaction with angry clients at work in December of 2004 substantially contributed to his permanently disabling panic disorder. Although the issue on this appeal has been framed as whether there is substantial evidence in the record to support the trial court's conclusion that Valero had not met his burden to show a real and measurable connection between his psychiatric disability and his employment, there is a conceptual and substantive distinction within the substantial evidence analysis depending on who has the burden of proof on a particular issue, which party prevailed on that issue and who appealed.

This distinction was addressed in *In re I.W.* (2009) 180 Cal.App.4th 1517 [103 Cal.Rptr.3d 538], a juvenile dependency case, where the trial court held that the mother produced insufficient evidence to meet the requirements of the parental exception to termination of her parental rights. Mother had the burden of proof on the exception issue. As the court explained,

"[The substantial evidence test] is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case (*Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742 [314 P.2d 33] [trier of fact is the exclusive judge of the credibility of the evidence and can reject evidence as unworthy of credence];

*Hicks v. Reis* (1943) 21 Cal.2d 654, 659–660 [134 P.2d 788] [trial court is entitled to reject in toto the testimony of a witness, even if that testimony is uncontradicted]).

"Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571 [150 P.2d 422]; *Caron v. Andrew* (1955) 133 Cal.App.2d 402, 409 [284 P.2d 544].) Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' (*Roesch v. De Mota, supra,* at p. 571.)" (*In re I.W., supra,* 180 Cal.App.4th at p. 1528.)

Here, Valero bore the burden to affirmatively show a real and measurable connection between his psychiatric disability and his employment. The trial court found he did not meet that burden. As appellant, he must show that his affirmative evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a [trial court] determination that it was insufficient to support a finding . . . ." (*Roesch v. De Mota, supra,* 24 Cal.2d at p. 571.) Put another way, the issue is "whether the evidence compels a finding in favor of [Valero] as a matter of law." (*In re I.W., supra,* 180 Cal.App.4th at p. 1528.)

III. *Analysis*

The voluminous administrative record was considered by the trial court. For various reasons, the court, after independently reviewing the administrative record evidence, agreed with the hearing officer and essentially declined to accept, or gave little weight to, the four medical opinions submitted by the parties. And, after consideration of other evidence, including voluminous employment, medical records and opinions, concluded that Valero failed to meet his burden to show "a real and measurable connection between his permanent psychiatric disability and his employment . . . ." As reflected in the trial court's order denying the writ of mandate, the trial court considered the conflicting evidence and positions of the parties and concluded that Valero's supporting doctors' opinions should be disregarded or discounted. Based on the remaining evidence and credibility issues surrounding Valero's claims, the trial court concluded that he failed to carry his burden of proof on the causation issue.

Valero argues that because three doctors (Drs. Terrell, Lewis and Whyman) issued reports that can all be interpreted as espousing the opinion that Valero's panic disorder was substantially caused by his experiences in the

workplace, and no doctor expressed an opinion that there was not a significant causal connection between Valero's job and his panic disorder, the trier of fact was required to conclude that there was a real and measurable connection between Valero's job and his panic disorder. We are not persuaded. Even if we were to assume, without deciding the issue, that Valero's evidence was " 'uncontradicted and unimpeached' " (*In re I.W., supra*, 180 Cal.App.4th at p. 1528), the medical evidence, particularly the four medical reports (see fn. 1, *ante*), were not "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" in favor of the party (Valero) who bore the burden of proving, by a preponderance of the evidence, a real and measurable connection between his employment and his injury. (*Roesch v. De Mota, supra*, 24 Cal.2d at p. 571; see *In re I.W., supra*, at p. 1528.)

The trial court concluded that the four doctors' reports were not persuasive because they were based upon Valero's undocumented and uncorroborated self-reporting about the cause of his panic attacks, and Valero's self-reports were not credible. Regardless of whether Valero did or did not subjectively believe that his experiences with angry clients contributed substantially to his panic attacks, a trier of fact could reasonably have concluded otherwise, and thus could conclude that the doctors' reports based upon Valero's uncorroborated self-reporting were not persuasive. We need not here recite all of the evidence that could reasonably have been deemed to render the doctors' reports less than persuasive, but we note the following.

First, although Valero made more than 30 visits to a hospital emergency room for his panic attacks, only five of these occurred either on or before his last day on the job, January 18, 2005. At least two of these five occurred on days when Valero did not work at all. At least 26 of his emergency room visits took place after that date, with at least 20 of them occurring during the time period from February 2005 through May 2007.

Second, the medical records pertaining to Valero's December 2004 and January 2005 doctor and emergency room visits are remarkably devoid of any mention of any attack by any angry client. His first panic attack was in early December of 2004. On a State of California "Claim Statement of Employee" form (form "DE 2501") signed by Valero on December 13, 2004, his answer to the question "Why did you stop working?" (some capitalization omitted) was "Neck pain, Hypertension Pain." In response to the question "Was this disability caused by your job?" (some capitalization omitted) he checked the "NO" box. On what appears to be a corresponding form signed on December 24, 2004, by Valero's Kaiser family practice physician, Nelson A. Rodriguez, M.D., the diagnosis was "acute tonsillitis," "benign hypertension," and "acute stress react nos." (Some capitalization omitted.) In

response to the question "Based on your examination of patient, is this disability the result of 'occupation,' either as an 'industrial accident' or as an 'occupation disease'?" (some capitalization omitted) Dr. Rodriguez checked the "No" box.

Third, Valero himself testified at his deposition that during his five years of working at the "welfare department" for the County he regularly dealt with clients and he had been yelled at before.

Valero points out that Dr. Greils expressed the opinion that Valero's panic disorder had "fully resolved," and that Dr. Greils stated, "I lack sufficient evidence" to express an opinion on the causation of that disorder. Valero is thus correct that Dr. Greils did not offer a conflicting opinion on what the cause or causes of Valero's panic disorder was or were. Dr. Greils was, however, clearly skeptical of Valero's self-report. So was the trial court.

This is not a case where undisputed facts lead to only one conclusion. Based on the totality of the facts and conclusions found by the trial court, and our limited role as an appellate court, we find substantial support for the trial court's order.

## DISPOSITION

The order denying the petition for writ of mandate is affirmed. Costs are awarded to respondent.

Dawson, Acting P. J., and Kane, J., concurred.