Filed 9/20/23  O.O. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| O.O.,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>      Respondent;<br><br>TULARE COUNTY HEALTH AND HUMAN SERVICES,<br><br>      Real Party in Interest. | F086535<br><br>(Super. Ct. Nos. JJV064833E, JJV064833F)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Hugo J. Loza, Judge.

O.O., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]      Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

Petitioner O.O. (father), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's order issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[2] terminating his reunification services and setting a section 366.26 hearing for October 2, 2023, as to his children, Daniel O. and C.O. (collectively the children).  Father seeks a writ directing the juvenile court to return the children to his custody or provide reunification services and visitation, and he requests a stay of the section 366.26 hearing pending our review of his writ petition.  We conclude father's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions and dismiss the petition.

**PROCEDURAL AND FACTUAL SUMMARY**

*Initial Removal*

In May 2022, the Tulare County Health and Human Services Agency (agency) responded to the hospital after it received an immediate referral for general neglect involving the children.  Father brought the children to the hospital because he thought they appeared sick with shortness of breath.  The social worker observed father to appear confused and have " 'jerky' " body movements during her interview.  Father claimed that he and the children were staying in his vehicle at a parking lot while they were visiting Visalia for the weekend.  He gave varying explanations for the reason that he was in Visalia, including visiting his pastor.  Father also indicated that his head "didn't feel right" after having a surgery the previous summer.

The children's mother, Melissa O. (mother), left the children with father approximately 18 months earlier when the parents separated from each other.  Father was not Daniel's biological father, but he was with mother during her pregnancy.  The children's sibling, Ch.O., remained with mother after the separation.  Father was

---

**1**     All further rule references are to the California Rules of Court.

**2**     All further statutory references are to the Welfare and Institutions Code.

previously on medication after being diagnosed with depression, bipolar, and paranoid schizophrenia.

Father's pastor, who also managed a sober living home, spoke to the social worker during the investigation. Father was now living at the sober living home that was managed by his pastor. The pastor did not believe father was currently fit to care for the children, and he suspected father was living out of his vehicle for a longer period of time. The social worker also interviewed mother, but she was unable to care for the children. In a meeting with agency staff, father disclosed methamphetamine and cocaine use in the past, but he did not specify the date of his last use.

The agency filed an original petition alleging the children were described by section 300, subdivisions (b)(1), (g), and (j). The petition alleged that the children were at substantial risk of suffering serious physical harm as a result of father's mental illness, history of substance abuse, and failure to provide adequate shelter. The petition further alleged that mother left the children without support and had her parental rights terminated as to siblings that she previously neglected. At the detention hearing held on May 11, 2022, father and mother were not present. Both parents were appointed counsel, and the juvenile court ordered the children detained from father's custody. A contested jurisdiction and disposition hearing was set for June 1, 2022.

***Jurisdiction and Disposition***

The agency's jurisdiction and disposition report, filed on May 26, 2022, recommended the original petition be found true, father be provided family reunification services, and mother be denied family reunification services pursuant to section 361.5, subdivision (b)(10) and (11). The children were placed in a resource family home, and Daniel was enrolled in a local elementary school for the first time since October 2021. Father was participating in an inpatient substance abuse treatment program for men at the pastor's church for approximately two weeks. Father denied that the family was homeless, and he identified a residence in Merced County where rent was paid for the

month of May. He acknowledged that he did not plan his trip to Visalia well, which led to the family spending two nights in a parking lot.

Father believed the children were removed from him because he had a nervous breakdown at the hospital. The children's oxygen levels and vitals all came back normal at the hospital despite father's belief that the children were having difficulty breathing. Father previously participated in the inpatient program at the church in 2014 to help wean him off of psychotropic medications. He hoped to continue in the program for at least six months while he received help for his mental health. Father desired to reunify with the children earlier, but he acknowledged that it was the best thing for him and the children. Father's pastor confirmed that father was engaging in the program and intended to stay for approximately six months.

At the combined jurisdiction and disposition hearing on June 1, 2022, father was present and represented by counsel. His counsel informed the juvenile court that father completed a "Waiver of Rights" form (JV-190), which was executed by father and filed on June 1, 2022. The juvenile court went through father's waiver form and specifically addressed each of the rights that father was waiving. Father provided a verbal affirmation that he signed the form and was giving up his rights to present evidence, remain silent, call witnesses, and have a trial on the petition. The juvenile court found that father made a knowing and intelligent waiver of his constitutional and statutory rights.

Father's counsel made no argument in opposition to the juvenile court exercising its jurisdiction over the children. The court proceeded to find the allegations in the petition true. As to disposition, father's counsel indicated that he was submitting. Counsel for mother entered an objection to the bypass recommendation without further evidence or argument. The court ordered the children removed from father and mother's custody, reunification services be provided to father, and reunification services not be provided to mother. Supervised visitation between father and the children was ordered to

occur twice per week for two hours with the agency having discretion to increase the length and frequency. A six-month review hearing was set for November 28, 2022, and father did not appeal the juvenile court's jurisdictional and dispositional orders.

***Family Reunification Period***

In its report for the six-month review hearing, the agency recommended the juvenile court continue reunification services for father. Father remained in the inpatient program and consistently visited the children. He was participating in his parenting program, providing negative drug test results, and attending individual therapy sessions. A contested six-month review hearing was set for December 12, 2022, at father's request.

At the contested review hearing, the social worker testified regarding the agency's decision to maintain supervision over father's contact with the children. The juvenile court adopted the agency's recommendation to continue reunification services to father, and it also provided the agency with discretion to return the children to father's custody after consultation with the children's counsel. A 12-month review hearing was set for May 22, 2023.

The agency's report for the 12-month review hearing recommended termination of father's reunification services and the setting of a section 366.26 hearing. Father was participating in individual therapy, and he had completed his inpatient program in March 2023. He continued to live in the men's recovery home at the pastor's church while he saved money for his own housing.

On April 6, 2023, and April 26, 2023, father tested positive for amphetamines, but the tests were deemed negative because the results were below the cut-off level. There were also 13 missed drug tests by father from December 17, 2022, through April 29, 2023. A hair follicle test completed in May 2023 provided positive results for methamphetamine at a level above the cut-off. When confronted with the positive results, father claimed it was due to supplements that he was taking.

The paternal grandmother began to supervise father's visits in January 2023. In March 2023, the paternal grandmother was admonished for leaving the children with father unattended while she went to the store. The agency suspended father's visitation after it received allegations against the father related to an incident during his supervised visits with the paternal grandmother. The nature of the law enforcement investigation was not detailed in the agency's reports because law enforcement wanted to interview father before he was provided any information. The agency also indicated that the paternal grandmother was made aware of the allegations, but she failed to report them to the agency.

A contested 12-month review hearing was set for June 12, 2023, at father's request. After an additional continuance for father's counsel to receive additional discovery, the contested 12-month review hearing was held on June 28, 2023. Father testified that he went through a "slight depression" after he was unable to visit with the children for two weeks, and he admitted to self-medicating with antidepressants that he used in the past. Father did not have a prescription for the antidepressant medications, and he apologized for lying to the social worker about the reasons for his positive tests.

The assigned social worker testified that law enforcement and an emergency response social worker were still completing their investigation into an incident during father's supervised visitation. The paternal grandmother testified that Daniel had never reported any inappropriate behavior by father during a supervised visit.

Counsel for father argued that the children should be returned to father's custody where they would be able to live together in the paternal grandmother's home. Father's counsel also indicated that father provided a sincere apology for lying to the social worker about his positive drug test results, and he implored the juvenile court to give father another opportunity. Counsel for the agency and children both argued that father was unable to demonstrate a substantial probability that the children might be returned home by the end of the 18-month review period on November 9, 2023.

The juvenile court followed the agency's recommendation to terminate father's family reunification services based upon its inability to find that there was a substantial probability that the children might be returned to father at the next hearing. It noted father's recent positive tests and continued struggles to adequately address his mental health issues. The court found that father's progress was minimal, terminated his family reunification services, and set a section 366.26 hearing. Father's visitation with the children was to occur weekly for four hours at a time with supervision by the agency or its designee.

## DISCUSSION

### *Relevant Legal Principles and Standard of Review*

At the 12-month review hearing, the juvenile court must order the return of the child to the physical custody of his or her parent unless it finds the return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (§ 366.21, subd. (f)(1).) If the court does not return the child, it may continue the case for up to six months if there is a substantial probability the child will be returned to parental custody within 18 months from the time the child was initially removed. (§ 366.21, subd. (g)(1).) To find a substantial probability of return, the court must find the parent regularly visited the child, made significant progress in resolving the problems prompting the child's removal, and demonstrated the capacity and ability to complete the objectives of the case plan and provide for the child's safety, protection, and well-being. (§ 366.21, subd. (g)(1)(A)–(C).) Otherwise, the court must terminate reunification services and set a section 366.26 hearing to implement a permanent plan for the child. (§ 366.21, subd. (g)(4).) Before the court may terminate services and set a section 366.26 hearing, however, there must be clear and convincing evidence the department provided reasonable services to the parent. (§§ 361.5, subd. (a), 366.21, subd. (g)(4).)

We review the juvenile court's findings and orders for substantial evidence, resolving all conflicts in favor of the court, and indulging in all legitimate inferences to uphold the court's ruling. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378−1379.) Under this well-established standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688−689.)

Father bears the burden on appeal of establishing that the evidence was insufficient to support the juvenile court's findings. (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.) And the juvenile court's order, "like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

On the issue of whether the court erred by failing to find a substantial probability of return existed, the question on appeal "becomes whether [his] evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) "Put another way, the issue is 'whether the evidence compels a finding in favor of [father] as a matter of law.' " (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

**The Extraordinary Writ Petition**

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the

juvenile court's orders from the setting hearing must, as father did here, file an extraordinary writ petition in this court on Judicial Council form JV–825 to initiate writ proceedings. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).) In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, father's petition is inadequate in presenting a claim of error. He indicated on page 3 of the preprinted "Petition for Extraordinary Writ" form (JV-825) that he was requesting an order that reunification services and visitation be provided and the children be returned to his custody. At various places in his petition father also states that the agency provided "false information" and "false statements" during an "improper investigation of [his] case." The only citations father makes to the record are to various statements by his counsel and the juvenile court about his waiver of rights during the jurisdiction and disposition hearing. Father describes many of these statements as "false," but he provides no explanation as to how the juvenile court's order terminating his reunification services was erroneous.

Nowhere in the petition does father assert that the juvenile court erred in finding it would be detrimental to return the children to his custody. Nor does he challenge the findings underlying the court's order terminating reunification services. He does not, for example, contend the reunification services offered by the department were not

9.

reasonable. Nor does he argue the court should have continued reunification services because there was a substantial probability the children could be returned to his custody after another period of reunification efforts.

Father does state in his petition that reunification should be restarted and an unjustified separation occurred. To the extent he is arguing he should receive additional time to reunify, the evidence does not support his contention. Other statements father made in his petition could be construed as a challenge to his waiver of rights on which the juvenile court exercised its jurisdiction. However, the court's jurisdictional findings are now final and no longer reviewable.

A party's "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the contention will be found by the appellate court to have been abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Without citation to authority or to the record, or any discussion supporting his conclusory statements, any challenge to the juvenile court's findings that return of the child would be detrimental and there was not a substantial probability of return by the 18-month review hearing must be deemed abandoned. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court has no obligation to "develop the appellants' arguments for them"].) Consequently, he failed to raise a claim of reversible error. Therefore, his petition does not comply with rules 8.450 through 8.452 and is inadequate for appellate review.

Even if we were to liberally construe the petition as disputing the juvenile court's finding that return of the children would be detrimental or refusal to find that there was a substantial probability that the children would be returned by the 18-month date in November, 2023, we would affirm the court's rulings. The children were primarily removed from father's care as a result of his problems with substance abuse and mental health. The court and agency provided father with an opportunity to reunify with the children by ordering a case plan that included substance abuse, therapy, and parenting

10.

programs, and drug testing. However, father resorted to the use of methamphetamines for self-medication after a brief period of depression at a critical point of his reunification timeline.

On that evidence, the juvenile court properly found the children could not be returned to father's custody without subjecting them to a substantial risk of detriment. Further, given father's minimal progress up to that point, there was no reason for the court to believe he could safely parent the children in the time remaining before an 18-month review hearing.

Based upon the record before us, we would conclude substantial evidence supports the juvenile court's findings and order. However, we dismiss father's writ petition because it fails to comport with rule 8.452. We also deny his request for a stay of the section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is dismissed. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A). The request for a stay of the section 366.26 hearing is denied.

11.