Filed 11/17/25  A.T. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| A.T.,<br><br>        Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>        Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>        Real Party in Interest. | F090371<br><br>(Super. Ct. No. 24JP-00036-A)<br><br><br>**OPINION** |

---

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Mark V. Bacciarini, Judge.

A.T., in propria persona.

No appearance for Respondent.

---

[*]        Before Levy, Acting P. J., Detjen, J. and Fain, J.[†]

[†]        Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Forrest W. Hansen, County Counsel, Ann Hanson, Deputy County Counsel, Gordon-Creed, Kelley, Holl & Sugerman LLP, Jeremy Sugerman, and Anne H. Nguyen for Real Party in Interest.

-ooOoo-

A.T. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court,[1] rule 8.452) from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code,[2] § 366.21, subd. (f)) terminating her reunification services and setting a section 366.26 hearing for December 3, 2025, as to her child I.M. ("the child").  Mother seeks a writ directing the court to return the child to her custody or continue reunification services.  We conclude mother's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

### Initial Removal

In April 2024, the Merced County Human Services Agency (agency) received a referral alleging mother and the child's father, S.M. (father), were engaging in sexual intercourse in the presence of the child.[3]  An agency social worker responded to the family's home with law enforcement.  The home was observed to be in a "deplorable" condition with a shattered exterior door window, trash, debris, random large items and clutter stacked high in the garage.  A "malodorous odor" was detected while the social worker stood in the entryway of the home.

The social worker was confronted by mother's friend, Amy, who explained that mother was not home.  The child came out of the home to ask if she was going to be taken away by the social worker.  Amy refused to allow the social worker to speak with

---

[1]     All further rule references are to the California Rules of Court.

[2]     All further statutory references are to the Welfare and Institutions Code.

[3]     Father is not a party to this petition and did not file his own separate petition.

the child or enter the residence. Mother and father eventually returned to the home, and they refused to cooperate with the investigation. The parents initially claimed the child was no longer at the residence, but father eventually walked the child to the maternal grandmother's vehicle. The maternal grandmother attempted to interfere with the social worker's efforts to leave with the child.

Law enforcement placed the child into protective custody due to the living conditions and allegations of inappropriate sexual conduct. The child was observed to have grime under her fingernails, dirty spots on her hands and arms, and several mosquito bites and cuts. The "heavy malodorous" odor from the home lingered on her clothing and hair. The child, at nine years of age, reported the conditions on the inside of the home were worse than the outside. During the investigation, Amy told the child that she had to flee the home to avoid being " 'taken away' " like her half sibling. The child disclosed witnessing her parents engage in sexual intercourse since she was six years old. She also observed physical altercations between the parents, and mother was described as the individual initiating the altercations.

On April 12, 2024, the agency filed an original petition alleging the child was described by section 300, subdivisions (b)(1), (c) and (j). The petition alleged the child was at substantial risk of suffering serious physical harm due to mother's untreated mental health issues, substance abuse, domestic violence relationship, and sexual conduct in the presence of the child. The petition further alleged the child was at substantial risk of suffering serious emotional damage as a result of the parents' conduct, and the child's half sibling had been similarly neglected due to mother's prior acts of domestic violence, untreated substance abuse, and mental health issues.

On April 15, 2024, the juvenile court ordered the child detained, and a combined jurisdiction and disposition hearing was set for May 8, 2024.

***Jurisdiction and Disposition***

The agency's report on jurisdiction and disposition recommended that the allegations in the petition be found true and family reunification services be provided to

3.

mother and father. The child was placed in a resource family home. The report detailed mother's child welfare history, which included 11 previous referrals from 2004 through 2019. The referrals involved allegations of general neglect, emotional abuse, and physical abuse. In 2019, a substantiated referral resulted in the removal of the child's half sibling due to mother's domestic violence, untreated substance use, and unresolved mental health issues. Mother's family reunification services were terminated for the half sibling in October 2020, and a legal guardianship was established in June 2021.

Mother insisted she was unaware of the reasons for the child's removal, and she denied the allegations in the petition. Mother minimized the poor conditions of the home, and she claimed her primary residence was at the maternal grandmother's home.

After multiple continuances, a contested jurisdiction and disposition hearing was held on July 16, 2024. Mother and father were both present and represented by counsel. The juvenile court found the allegations in the petition true and ordered family reunification services for both parents. As part of her case plan, mother was ordered to participate in domestic violence counseling, parenting education, substance abuse treatment, and drug testing. Supervised visitation was ordered between mother, father, and the child at no less than once per month, and a six-month review hearing was set for January 8, 2024.

*Family Reunification Period*

In its report for the six-month review hearing, the agency recommended the juvenile court continue family reunification services for mother and father. Mother was not in compliance with the majority of the objectives of her case plan. She was reportedly homeless, and she would not provide the social worker with an address for her location.

Mother was not participating in her domestic violence, mental health, or substance abuse services. Her substance abuse assessment from December 2024, recommended two group sessions per week and one individual session per month. The assessment also indicated mother provided a positive drug test result for methamphetamine and

4.

amphetamine.  Mother completed a parenting class in October 2024, and her supervised visitations were going well.

At the continued six-month review hearing held on January 15, 2025, the juvenile court continued family reunification services and set the 12-month review hearing for May 28, 2025.  The court found mother's progress toward alleviating the causes necessitating placement was minimal.

In advance of the 12-month review hearing, the child's court appointed special advocate (advocate) submitted a report and recommendations.  The advocate recommended termination of mother's family reunification services due to her non-compliance with services and inconsistent visitation.  The advocate noted the child left visits feeling "emotionally overwhelmed, distressed, and confused."  The child was reportedly "thriving" in her current placement, and her care providers were meeting her needs.  The child's aunt was being considered for placement, and the advocate helped facilitate visits between the child and aunt's family in Los Angeles.

The agency's report for the 12-month review hearing recommended termination of mother and father's family reunification services.  Mother failed to complete her drug treatment program due to several positive drug tests.  Mental health and domestic violence assessments had not been completed by mother.  Mother continued to visit regularly with the child.  The family was observed hugging and showing affection towards each other during bi-weekly supervised visits.  The child's maternal aunt was approved as a resource parent, and the child was placed in her home on June 12, 2025.

A contested 12-month review hearing was held on August 20, 2025.  Mother was present and testified regarding her progress in services.  Mother testified that she had been participating in visits by phone, and had two in-person visits since the child was placed with the maternal aunt in Los Angeles.  She completed a parenting program, but she acknowledged that she had not engaged in domestic violence classes or mental health treatment.  Mother claimed she had maintained sobriety since June 2025, but she was not

5.

participating in any substance abuse treatment. The current social worker testified regarding her efforts to assist mother with her case plan by providing referrals to services.

In closing argument, counsel for the agency argued that there was no substantial probability that the child would be returned to mother's care by the end of the 18-month period on October 10, 2024. Mother's counsel acknowledged mother's progress was not significant, but she insisted that she could demonstrate "the capacity and the ability to complete the objectives" of her case plan in the two additional months.

After hearing argument from counsel, the juvenile court followed the agency's recommendation to terminate reunification services. It did not believe that two more months of services would "make any difference." The extent of progress made by mother was found to be minimal. A section 366.26 hearing was set for December 3, 2025.

## DISCUSSION

### *Relevant Legal Principles and Standard of Review*

At the 12-month review hearing, the juvenile court must order the return of the child to the physical custody of his or her parent unless it finds the return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (§ 366.21, subd. (f)(1).) If the court does not return the child, it may continue the case for up to six months if there is a substantial probability the child will be returned to parental custody within 18 months from the time the child was initially removed. (§ 366.21, subd. (g)(1).) To find a substantial probability of return, the court must find the parent regularly visited the child, made significant progress in resolving the problems prompting the child's removal, and demonstrated the capacity and ability to complete the objectives of the case plan and provide for the child's safety, protection, and well-being. (§ 366.21, subd. (g)(1)(A)–(C).) Otherwise, the court must terminate reunification services and set a section 366.26 hearing to implement a permanent plan for the child. (§ 366.21, subds. (g)(4) & (h).) Before the court may terminate services and set a section 366.26 hearing, however, there must be clear and convincing evidence the

6.

agency provided reasonable services to the parent. (§§ 361.5, subd. (a), 366.21, subd. (g)(4).)

We review the juvenile court's findings and orders for substantial evidence, resolving all conflicts in favor of the court, and indulging in all legitimate inferences to uphold the court's ruling. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378−1379.) Under this well-established standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688−689.)

Mother bears the burden on appeal of establishing that the evidence was insufficient to support the juvenile court's findings. (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.) And the court's order, "like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

On the issue of whether the juvenile court erred by failing to find a substantial probability of return existed, the question on appeal "becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) "Put another way, the issue is 'whether the evidence compels a finding in favor of [mother] as a matter of law.' " (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

***The Extraordinary Writ Petition***

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court on Judicial Council form JV–825 to initiate writ proceedings. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).) In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy, recognizing that a parent representing himself or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, mother's petition is inadequate in presenting a claim of error. She indicated on page 2 of the preprinted "Petition for Extraordinary Writ" form (JV-825) that the juvenile court's order was erroneous on the grounds that "if [the] full amount of time was given [then] services would have been able to be completed." Under the summary of factual basis for the petition, mother cites to the reporter's transcript for the contested 12-month review hearing as the reason to continue services.

Mother did not provide any context from which this court could construe an alleged error by citing to relevant facts in the appellate record or any legal authority. Nowhere in the petition does mother assert that the juvenile court erred in finding it would be detrimental to return the child to her custody. Nor does she challenge the findings underlying the court's order terminating reunification services. She does not, for example, contend the reunification services offered by the agency were not reasonable. Nor does she argue the court should have continued reunification services because there

was a substantial probability the child could be returned to her custody after another period of reunification efforts.

A party's "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the contention will be found by the appellate court to have been abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Without citation to authority or to the record, or any discussion supporting her conclusory statements, any challenge to the juvenile court's findings that return of the child would be detrimental, reasonable services were provided by the agency, and there was not a substantial probability of return by the 18-month review hearing must be deemed abandoned. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court has no obligation to "develop the appellants' arguments for them"].) Consequently, mother failed to raise a claim of reversible error. Therefore, her petition does not comply with rules 8.450 through 8.452 and is inadequate for appellate review.

Even if we were to construe mother's petition as a challenge to the juvenile court's refusal to find that there was a substantial probability that the child would be returned by the next review date, her claim lacks merit. Mother's only complaint is that she would have completed services if provided with a full 18-months of family reunification services. However, the evidence demonstrated that mother had only completed her parenting program during the 16-month period that she was provided services. At the time of the contested 12-month review hearing, mother was not participating in domestic violence classes, mental health services, or substance abuse treatment. There was simply no basis for the court to determine mother would have made drastic efforts to address the various problems that led to the child's removal in the next two months.

In sum, mother is unable to prove that the juvenile court was compelled as a matter of law to find that there was a substantial probability of return by the 18-month review date. Based upon the record before us, we would conclude substantial evidence

9.

supports the court's findings and order.  However, we dismiss mother's writ petition because it fails to comport with rule 8.452.

## DISPOSITION

The petition for extraordinary writ is dismissed.  The request for a stay of the section 366.26 hearing is denied.  This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).