Filed 4/13/26  Estate of Andrade CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of JUAN JOSE ANDRADE, Deceased. | B346006 |
| MARIA ANDRADE, Petitioner and Respondent, v. MICHAEL J. ULISSE, as Administrator, etc., Objector and Appellant. | Los Angeles County Super. Ct. Nos. 24STPB10682, 21STPB02665 |

APPEAL from an order of the Superior Court of Los Angeles County, Gus T. May, Judge.  Affirmed.

Law Office of Alan D. Davis and Alan D. Davis for Objector and Appellant.

Law Offices of Sue C. Swisher and Sue C. Swisher for Petitioner and Respondent.

Michael J. Ulisse, as Administrator for the Estate of Juan Jose Andrade (the Estate), appeals an order granting Maria Andrade's spousal property petition under Probate Code section 13650.[1]  Ulisse argues the evidence compelled denial of the petition on equitable estoppel grounds.[2]  We disagree and affirm.[3]

---

[1]     Statutory references are to the Probate Code.  For clarity, we refer to Maria by her first name.

[2]     Ulisse also purports to challenge the portion of the order requiring Maria to pay one-third of a creditor's claim for back income taxes owed by the Estate out of her one-third share of the Estate property.  However, as he acknowledges in a supplemental letter brief filed in response to this court's questions, that part of the order is essentially null—or, as Ulisse puts it, "futile"— because Maria will receive her portion of the Estate property (under the spousal property petition or otherwise) only after the tax lien is paid upon the sale of the Estate's sole asset. (See §§ 11420, 11421.)  Because Ulisse concedes he is not aggrieved by this "futile" part of the order—and thus has no standing to challenge it—we disregard this part of his appeal. (See Code Civ. Proc., § 902; *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737; *El Dorado Irrigation Dist. v. State Water Resources Control Bd.* (2006) 142 Cal.App.4th 937, 977.)

[3]     In their supplemental letter briefs (see fn. 2, *ante*), the parties have referred to post-appeal matters—including the sale of the Estate's sole asset and payment of other creditor claims— that are not part of the appellate record.  Those matters are beyond the scope of this appeal and we do not address them in this opinion.

## BACKGROUND

Consistent with our standard of review, we state the evidentiary record in the light most favorable to the probate court's factual findings. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360 (*Feduniak*) ["existence of an estoppel is generally a factual question" reviewed "in the light most favorable to the judgment"]; accord *Estate of Bonanno* (2008) 165 Cal.App.4th 7, 22 (*Bonanno*).)

Juan Andrade died intestate in December 2020. Maria—decedent's surviving spouse—filed a petition for probate in March 2021, and she was appointed administrator in August of that year. Maria listed herself, decedent's son, and decedent's three daughters as beneficiaries. She received letters of administration in November 2021, with a $250,000 bond issued by Suretec Insurance Company. In February 2022, Maria filed an inventory and appraisal valuing the Estate's sole asset—the family residence owned as decedent's separate property—at $600,000.

In June 2023, Ulisse filed a petition to remove and replace Maria as administrator on the ground that the Estate had "been open for over two years, and there is no end in sight." Ulisse declared that Suretec, as the surety company that bonded Maria, "desires to have the matter closed as soon as possible to avoid a potential surcharge" and that the surety had nominated Ulisse to be successor administrator. In January 2024, the trial court granted the petition and appointed Ulisse as successor administrator of the Estate.

On September 20, 2024, Maria filed a spousal property petition to have her statutory one-third share of the Estate determined without administration.[4]

Ulisse objected to the spousal property petition. He initially argued granting the petition would frustrate administration of the Estate because (a) the residence constituting the Estate's sole asset was subject to a $39,512.78 tax lien from the Franchise Tax Board (FTB); (b) Ulisse would be unable to sell the residence if the petition were granted, as Maria's share of the Estate would be immediately payable to her; and (c) if he were unable to sell the residence, it would fall into foreclosure and the FTB would not be paid.[5]  After Maria confirmed to Ulisse that she intended to cooperate in the sale of the residence, the successor administrator supplemented his objection to the spousal property petition.[6]

---

[4]     Because decedent was survived by four children, Maria is statutorily entitled to one-third of the Estate as surviving spouse. (§ 6401, subd. (c)(3)(A) [as to the decedent's separate property, where the "decedent leaves more than one child," the surviving spouse is entitled to "[o]ne-third of the intestate estate"].)

[5]     Ulisse added that he had been forced to bring an unlawful detainer action to evict Maria and "other people" from the property.  He has requested that we take judicial notice of court records from that proceeding.  We grant the request. Those records show Maria agreed to vacate the residence by a stipulated judgment entered on January 13, 2025 and no back rent was charged against her.

[6]     Maria confirmed her agreement to cooperate with Ulisse in a February 4, 2025 filing to clear probate notes.

4

In a supplement to his objection, Ulisse argued Maria should be equitably estopped from asserting her spousal property rights because she had led him to believe she "intended to probate the estate when she filed her petition [for probate] in 2021." He asserted bypassing administration of Maria's spousal share would "deny [him] and his attorney substantial fees and commissions" and, had they "known that [Maria] would be filing a spousal property petition, thus reducing their fees, they would not have gotten involved in the estate." Thus, Ulisse maintained Maria should be "estopped from asserting her statutory rights" because she "took advantage of the situation and filed her spousal property petition to avoid the additional costs, fees, and claims" that attached to the Estate when he became successor administrator.

Maria responded, arguing Ulisse failed to establish the grounds for equitable estoppel. She emphasized Ulisse knew "the decedent was survived by a spouse" when he *voluntarily* chose to become involved in the estate," and he "also knew that a surviving spouse had statutory rights to take her share without administration." While Maria acknowledged her "*former* counsel, failed to file the Final Account in a timely manner," she urged that, as administrator, she had "performed most of the [required] services, including gathering assets, identifying creditors, filing [the] Inventory & Appraisal and providing information for her former counsel to file the Final Account."[7] Notwithstanding

_____

[7]     According to Maria, her former counsel did eventually file the Final Account, and all that remained to close the Estate (before Ulisse moved to replace her) was "to clear Probate Notes regarding notice and distribution to the Minors." Since Ulisse's appointment as successor administrator, Maria claimed he had

5

her petition to probate the Estate, she argued Ulisse had no reasonable basis to believe she intended her spousal share to be administered, as she had indisputably declined to file the requisite election within the four-month window specified in section 13502.[8]

The probate court granted the spousal property petition, finding Ulisse "did not meet his burden to show that [Maria] should be estopped" from asserting her statutory rights as the surviving spouse. The court acknowledged that Maria initiated the probate and filed an account that included the full value of the real property as part of the Estate ready for distribution, but found these facts were insufficient to estop her from asserting her statutory rights, as she had "handled much of the estate administration" herself and she "did not file the required spousal property election" to have her statutory share administered.

_____

failed to communicate with the tenant on the property, failed to collect rental income, failed to make mortgage payments, and allowed the mortgage to fall into default. Thus, she maintained it was Ulisse's own "poor management of her late husband's estate" that had delayed closing the probate. Ulisse disputes this. He argues Maria should have "vacated the family home in a timely manner" and, if she had done so, he could have sold the property without the need to litigate an unlawful detainer action. (See fn. 5, *ante*.)

[8] As we will discuss, section 13502 provides that upon "the election of the surviving spouse," the spouse's share of the decedent's separate property shall be administered, provided that the election is "made by a writing specifically evidencing the election filed in the proceedings for the administration of the estate of the deceased spouse within four months after the issuance of letters [of administration]." (§ 13502, subds. (a)–(b).)

Emphasizing the latter point, the court observed, "absent the filing of a spousal election, it is not clear how [Ulisse] could prove that he reasonably relied on [Maria's] conduct [citation], particularly given that [Maria] was removed from serving as personal representative due to her counsel's ineffectiveness and failure to properly represent the estate."

The probate court entered the order granting Maria's spousal property petition. Ulisse timely appealed.

## DISCUSSION

Ulisse contends the trial court erred by declining to estop Maria from exercising her statutory rights. In sum, he argues "Maria stood by and let [him] take over the probate, leading [Ulisse] to believe that at some point in time he would be paid based on the full value of the estate," but, in fact, "Maria took advantage of the situation . . . because she knew that if [the spousal property petition were] granted, the attorney fees and administrator commissions wouldn't be paid out of her share of the estate." Thus, Ulisse contends the evidence of Maria's alleged knowing deception and his reasonable reliance compelled a finding equitably estopping Maria from exercising her spousal property rights. We disagree.

" 'The rule is well established that the existence of an estoppel is generally a question of fact . . . , and ordinarily the trial court's determination is binding on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts.' " (*Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 266; accord *Feduniak, supra,* 148 Cal.App.4th at p. 1360; *Bonanno, supra,* 165 Cal.App.4th at p. 22.) Accordingly, we review the trial court's ruling in the light most favorable to its factual findings and confine our review to a determination of

7

whether substantial evidence supports the findings challenged on appeal. (*Feduniak,* at p. 1360.)

Critically, the party asserting the estoppel—namely, Ulisse —"bears the burden of proving its application." (*Blaser v. State Teachers' Retirement System* (2022) 86 Cal.App.5th 507, 528, citing *Busching v. Superior Court* (1974) 12 Cal.3d 44, 53.) This burden of proof has special salience for our standard of review. Where, as here, a ruling rests on the fact finder's determination that the appellant failed to satisfy his burden of proof, the question for the reviewing court is not necessarily "whether there is substantial evidence in the record to support the trial court's conclusion," but rather " 'whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 965–966 (*Valero*); *Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571; *Caron v. Andrew* (1955) 133 Cal.App.2d 402, 409.) Reviewing courts have consistently recognized "it is almost impossible" for the party who had the burden of proof "to prevail on appeal by arguing the evidence compels a judgment in his favor." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486 (*Bookout*).) This is because, "unless the trial court makes specific findings of fact in favor of the losing [party]," a reviewing court must "presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof." (*Ibid.*) "[T]he trial court's judgment is presumed to be correct on appeal, and we indulge all intendments and presumptions in favor of its correctness." (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769–770.)

Estoppel is an equitable doctrine that "deprives another of rights or defenses." (*Bonanno, supra,* 165 Cal.App.4th at p. 22.) " 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' " (*Ibid.*, quoting Evid. Code, § 623.) " ' "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel:  (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be [*sic*] acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' " (*Bonanno,* at p. 22, quoting *Feduniak, supra,* 148 Cal.App.4th at p. 1359.)

The probate court based its order on the second element— expressly observing that Ulisse had the burden to prove Maria "intended her conduct" to influence his decision to administer the Estate.  On appeal, Ulisse appears to contend he satisfied this burden by proving Maria filed the petition for probate, she "was the administrator for three years," and she "filed an accounting," all of which led to his "expectation of earning fees based on the full value of the estate."[9]  The probate court rejected

---

[9]    Admittedly, this represents our best effort to discern Ulisse's argument because—despite citing the four elements for establishing an equitable estoppel—his appellate briefs only vaguely attempt to connect the evidence to the elements he had the burden of proving.  Indeed, most of his argument focuses on what Maria did *after* he replaced her as administrator, which has no bearing on whether she acted in a way that gave Ulisse the right to believe she did not intend to exercise her spousal

9

this contention.  While it acknowledged Maria opened the probate and filed an accounting, the court was not convinced these facts proved Maria intended (or caused Ulisse reasonably to believe she intended) to waive her statutory rights if another administrator were to replace her.  The court based this finding primarily on the undisputed evidence that Maria "did not file the required spousal property election" to have her statutory share administered.  The law and the evidence support the court's conclusion.

Section 13500 establishes the default rule that, "when a spouse dies intestate leaving property that passes to the surviving spouse," the property passes to the survivor "and no administration is necessary."[10]  Section 13502 establishes a procedure for the surviving spouse to opt out of this default rule by an affirmative election.  Under the statute, upon "the election of the surviving spouse," the separate property of the decedent "may be administered," provided that, the "election shall be

---

property rights *before* he moved to replace her.  This is a problem for Ulisse.  Although he contends he's been injured because he "would not have gotten involved in the estate" had he "known that [Maria] would be filing a spousal property petition, thus reducing [his] fees," he never directly—let alone clearly—explains what conduct by Maria justified this apparent assumption *before* he "got[ ] involved in the estate."

[10]    This default rule is subject to rules governing the disposition of community or quasi-community property (see § 13540 et seq.) and the surviving spouse's personal liability for debts chargeable against the property (see § 13550 et seq.). (See § 13500.)  Those rules are not relevant to the estoppel question that we address here.

made by *a writing specifically evidencing the election* filed in the proceedings for the administration of the estate of the deceased spouse *within four months after the issuance of letters*, or within any further time that the court may allow upon a showing of good cause."  (§ 13502, subds. (a)–(b), italics added.)  In granting the spousal property petition, the probate court rationally connected these governing statutes to the elements of Ulisse's equitable estoppel objection, observing that, "absent the filing of a spousal election, it is not clear how [Ulisse] could prove that he reasonably relied on [Maria's] conduct" when he moved to replace her as the Estate's administrator.  The court's reasoning was sound.

Ulisse argues it is irrelevant that Maria did not elect to have her statutory share administered because she can be "deemed" to have filed the election under the equitable estoppel doctrine.  He cites *Bonanno* in support, but that case is materially different for reasons the probate court identified in its order.

The decedent in *Bonanno* died intestate.  (*Bonanno, supra,* 165 Cal.App.4th at p. 12.)  He was survived by his estranged spouse Jean Bonanno, a daughter from a previous marriage, and a long-term companion, each of whom asserted competing claims to the estate.  (*Id.* at pp. 12–13.)  The daughter filed a petition to probate and was appointed administrator.  (*Id.* at p. 12.)  After protracted disputes, the parties executed a written settlement agreement resolving all issues concerning the estate's distribution.  (*Id.* at pp. 14–15.)  After the probate court approved the agreement, Jean filed petitions seeking to have her agreed-upon share distributed to her as surviving spouse without administration.  (*Id.* at p. 16.)  Although the petitions did not

alter the substantive distribution set forth in the agreement, they had the collateral effect of reducing the statutory compensation payable to the daughter for her work as administrator. (*Ibid.*) The daughter objected, arguing that by executing the settlement agreement, Jean had "waived, or was estopped from claiming, any rights sought in the spousal property petitions." (*Ibid.*) The probate court granted the petitions, reasoning the settlement agreement "did not constitute a writing specifically evidencing an election [citation] to administer the properties" under section 13502. (*Bonanno*, at pp. 16–17.) The daughter appealed.

The *Bonanno* court reversed, concluding Jean's execution of the settlement agreement constituted an election to have her rights determined through that agreement rather than through the statutory mechanism provided in section 13500. (*Bonanno, supra,* 165 Cal.App.4th at pp. 21–24.) The reviewing court reasoned the settlement was a comprehensive, bargained-for resolution of all claims to the estate, and Jean could not accept the benefits of that agreement while later asserting statutory rights that would alter the administrative consequences of the distribution. Critically, the *Bonanno* court rejected Jean's suggestion that "there was no evidence that she intended to forgo her statutory rights to have the property pass outside of probate," rejoining, "the settlement agreement belies this suggestion." (*Id.* at p. 23.) After reciting the substantive terms of the agreement, the court held the "only interpretation of these sections is that Jean had agreed to permit the probate court to enter an order distributing the property pursuant to the agreement, and therefore, Jean was acknowledging that she would not ask that the property to which she was entitled pass to her outside of probate, free of administration." (*Ibid.*) Thus, even without

12

a statutory election, the settlement agreement estopped Jean from bypassing administration after causing the decedent's daughter to believe she would be fully compensated for acting as administrator, as she had with Jean's acquiescence in the years leading up to the settlement. (*Ibid.*)

As the probate court recognized, this case is materially different from *Bonanno* because, unlike the surviving spouse in that case, Maria "did not negotiate and sign a settlement agreement arguably waiving her right to file [a spousal property] petition," and she did not acquiesce to Ulisse's administration but was "removed from serving as personal representative due to her counsel's ineffectiveness." (Cf. *Bonanno, supra,* 165 Cal.App.4th at p. 23.) Ulisse does not address these critical distinctions in his appellate briefs. Instead, as we have discussed, he relies on Maria's petition for probate and her service as administrator for more than (what he says is) a "reasonable period of time."[11] But, again, while the probate court acknowledged these facts, it was not convinced this evidence proved Maria's ill intent or Ulisse's reasonable reliance, as other evidence showed Ulisse knew Maria was the surviving spouse, he knew she had the right to receive her statutory share of the Estate without administration, and he knew she had not filed an election to have her share administered. On this record, given the conflicting evidence regarding Maria's intent and the reasonableness of Ulisse's reliance, we cannot say the evidence *compelled* a finding equitably estopping Maria from exercising

---

[11] Ulisse now also contends the doctrine of laches should have barred Maria from exercising her statutory rights. Because he did not make this argument in the proceedings below, we deem it forfeited.

13

her statutory rights.  (See *Valero, supra,* 205 Cal.App.4th at pp. 965–966; *Bookout, supra,* 186 Cal.App.4th at p. 1486.)

## DISPOSITION

The order is affirmed.  Maria Andrade is entitled to costs.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.